# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

## THE FIREMEN'S INSURANCE COMPANY

*v.*

## THE APPLETON PAPER AND PULP COMPANY.

*Filed at Ottawa March 28, 1896.*

1. TRIAL—*questions for special findings—requisites of.* Questions need not be submitted to a jury for their special findings thereon unless they relate to ultimate facts upon which the rights of the parties depend and which would control the general verdict.

2. INSURANCE—*alterations in property under permission do not avoid policy.* The removal of an automatic sprinkler equipment with which an insured mill is partly equipped, in order to replace it with a more complete system, does not avoid a policy, where permission is given to make alterations and repairs, where the presence of such sprinkler is not a condition of the risk.

3. SAME—*construction of permission to alter and repair building.* A provision exempting an insurer from liability for loss or damages caused by neglect of the assured, or in case the risk should be increased by any means within his control, is to be construed in connection with permission given to make alterations, additions and repairs, and such permission cannot be confined to cases in which the risk is not increased.

*Firemen's Ins. Co.* v. *Appleton P. & P. Co.* 59 Ill. App. 511, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

WILLIAM J. AMMEN, for appellant:

If the subject matter be changed in some manner so as to materially increase the risk, the insurer will be excused from any further liability. 2 Biddle on Insurance, sec. 710; *Lattomus* v. *Insurance Co.* 3 Houst. (Del.) 404; 1 Allen, (Mass.) 308.

An efficacious method of testing an increase of risk is to find out whether the knowledge of the fact of the alleged increase would have led the insurer to charge a higher rate. 2 Biddle on Insurance, sec. 712; *Kern* v. *Insurance Co.* 40 Mo. 19; *Hardman* v. *Insurance Co.* 20 Fed. Rep. 594.

Where there is a clause against any alterations or additions without notice and the insurer's consent, this will avoid, if broken, whether material or not. 2 Biddle on Insurance, sec. 717; *Lyndsay* v. *Insurance Co.* 28 Upp. Can. (Q. B.) 326.

Alterations in a building of a substantial nature, such as the removal of a large part of two floors, etc., will avoid the policy. 2 Biddle on Insurance, sec. 712; *Mack* v. *Insurance Co.* 106 N. Y. 560.

Where the risk is increased by the use of an additional stove, the question is not whether that caused the loss, but whether it increased the risk. 2 Biddle on Insurance, sec. 728; *Daniels* v. *Insurance Co.* 48 Conn. 105.

The provision that if the situation or circumstances affecting the risk upon the property insured shall be changed, with the consent of the insured, so as to increase the risk, the policy shall be void, binds the assured not only not to make any change which will increase the risk, but prohibits him from discontinuing any precaution represented in the application to have been adopted

and practiced with a view to diminish the risk.   1 May on Insurance, sec. 218.

U. P. SMITH, also for appellant:

The clause, "this company shall not be liable for loss or damage if the risk be increased by any means within the control of the insured," has been repeatedly held to apply to improvements, repairs and alterations, such as the erection of new buildings.   (*Murdock* v. *Insurance Co.* 2 Comst. 210; *Francis* v. *Insurance Co.* 1 Dutch. 78.)   Or the putting of an oven in a house already built.   (*Boatright* v. *Insurance Co.* 1 Strob. 281.)   Or the introduction of new machinery.   (*Reid* v. *Insurance Co.* 11 Upp. Can. 345.)   Or even the removal of a steam engine from one place to another upon the same premises.   *Bonnell* v. *Jeremy*, 3 W., H. & G. 535; May on Insurance, sec. 220.

Under the usual provision against increase of risk it is immaterial whether the loss accrued thereby or not. *Gardner* v. *Insurance Co.* 38 Me. 439; *Merriam* v. *Insurance Co.* 21 Pick. 162.

GREEN, ROBBINS & HONORE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee brought this suit on an insurance policy issued upon its mill building and machinery by appellant, and on the trial obtained a verdict for $2182.52, upon which judgment was entered.   That judgment has been affirmed by the Appellate Court.

The only errors complained of relate to the refusal of the trial court to submit to the jury certain requests for special findings, and to the giving and refusing of instructions.   Defendant asked the court to submit to the jury twelve questions of fact.   The court submitted four of them and refused the others.   It is argued that the court was in error in so doing, because the answers to the questions would have enabled the defendant to see

the basis upon which the general verdict was returned, and because the special findings were essential for that purpose. All of the questions proposed related to evidentiary matters, and were not of a character contemplated by the statute. The only use of them would have been that stated by counsel: to enable ·the defendant to see the basis for the general verdict and learn what the jury thought about various matters of evidence. But this is not a sufficient reason for submitting such questions to the jury. The facts stated in the questions were not ultimate facts, upon which the rights of the parties depended and which would control the general verdict, and the refusal to submit them was proper. *Chicago and Northwestern Railway Co.* v. *Dunleavy*, 129 Ill. 132.

The argument upon the giving and refusing of instructions is nothing more, in effect, than a re-statement of the formal assignments of error. Counsel merely states, as to the one instruction given at the request of plaintiff, that the giving of it was gross error, and as to each instruction refused, that the refusal was erroneous and harmful, or gross or harmful error, without indicating wherein or why the action was erroneous or in what any of the alleged errors consisted. It is not the duty of the court to search the record for the purpose of bringing to light possible errors which counsel do not perceive and point out, but only to pass upon those which are presented for consideration. The instruction given on the part of plaintiff has, however, been discussed by appellee and in the reply brief of appellant, and the ground of objection having been pointed out in that way, although it came as late as the reply brief, will be noticed, although we are not bound to do so. The instruction was as follows:

"The jury are instructed that, by the terms of the policy sued on, plaintiff was authorized to make alterations, additions and repairs to the building and machinery, and under this clause of the policy plaintiff was authorized to extend the sprinkler system then in the mill, even to

the extent of tearing out the old sprinkler system and supplanting it with a new one, provided that in making repairs and alterations the plaintiff exercised ordinary care,—that is, such care as prudent men ordinarily exercise about their own affairs,—and did not thereby unnecessarily or for an unnecessary length of time increase the risk under said policy.   And if you should find, from the evidence, that at the time of the fire the mill was unequipped with any sprinkler system connected with water, that would constitute no defense for plaintiff's recovery in this action, if you should further find, from the evidence, that the absence of such sprinkler system was owing to the making of repairs and alterations, and that in making the repairs in progress at the time of the fire plaintiff exercised such ordinary care, and did not unnecessarily or for an unnecessary length of time increase the risk of fire under said policy."

The policy sued on was issued November 15, 1890, for the term of one year.   On the face of it there was a slip attached describing the property, specifying $2000 insurance on the mill building and additions, including flumes, foundation, drainers and automatic sprinkler equipment complete, situated on the bank of Fox river, head of canal, in the city of Appleton, Outgamie county, Wisconsin, and on fixed and movable machinery, shafting, belting, pulleys, tools, rotaries, beaters, steam, gas and water pipes, presses, vats, scales, and all millwright work, fixtures and appurtenances contained therein, with "permission to run nights, to make alterations, additions and repairs to building and machinery, and to light with electric light or closed kerosene lamps."   At the foot of the slip was the following, in red ink:   "It is understood and agreed that when the unequipped portion of this mill is thoroughly equipped with improved automatic sprinkler, the annual rate shall be reduced twenty-five per cent."   On January 30, 1891, another slip was attached, and marked, "This form substituted.—1/30/91," with the

same conditions, except that the clause in red ink was omitted. Among the terms and conditions of the policy was the condition that defendant should not be liable for loss or damage caused "by neglect of assured to use all practicable means to save and preserve the property from damage at and after the fire, * * * or the working of carpenters or other mechanics in the building, altering or repairing the property named in this policy, unless permission for such work be endorsed in writing hereon, * * * or if the risk be increased by any means within the control of the assured."

When the policy was issued the mill was partly equipped with the sprinkler system; which plaintiff undertook to change for another and complete system covering the entire mill, and the change was being made at the time that the fire occurred. The change to the new sprinkler system occupied two or three weeks, and the new improved system was not ready for use when the fire occurred. The objections to the instruction seem to be, that the automatic sprinkler equipment, being a part of the property insured, could not be removed without avoiding the policy, and that the permission given to make alterations, additions and repairs to the building and machinery did not authorize any change of the sprinkler system. The sprinkler equipment was merely described as a part of the property insured, and there was no condition or stipulation that it should be kept or maintained, and it was not different from any of the other property described in the policy. There is no more reason for saying that it could not be removed than that any other piece of machinery or fixture about the mill could not be taken out without annulling the policy. If the existence of the sprinkler equipment was a condition of the risk, it might have been easily provided for; but the policy contained no condition of that kind. The contract could not be given the effect of a warranty that the sprinkler equipment should remain in the building

during the life of the policy.  Its removal was not a breach of a warranty.   *Schmidt* v. *Peoria Marine and Fire Ins. Co.* 41 Ill. 295;  *Aurora Fire Ins. Co.* v. *Eddy*, 55 id. 213.

The provision exempting the company from liability for loss or damage caused by neglect of the assured, or in case the risk should be increased by any means within the control of the assured, is to be construed in connection with the permission to make alterations, additions and repairs to the buildings and machinery.  It is insisted that only such alterations, additions and repairs might be made as could be accomplished without in any manner increasing the risk; that up to the point of increasing the risk the assured had the right to make alterations, additions and repairs, but no further; that this was the limit of its right in this respect, and that the moment the limit was passed the policy became inoperative and void. This is not a fair construction of the provision.  The permission was not confined to the making of such alterations, additions and repairs as did not increase the risk, as would certainly have been done if that was the intention, but the permission was to make any alterations, additions and repairs which the plaintiff might choose to make.  If the risk was not to be increased, in any degree, beyond the risk in the ordinary operations of the mill without such permission, the stipulation would be of practically no benefit, because such work necessarily increases risk.  The permission would give nothing and be of no avail.  The only reasonable construction would be that plaintiff could not increase the risk further than necessary in the making of the alterations, additions and repairs.  The permission to make alterations included the right to alter and extend the existing sprinkler system, and we think the court, by the instruction, properly interpreted the conditions of the policy.

It was contended at the trial, by defendant, that the work was negligently done and the hazard thereby increased, so as to avoid the policy under the stipulation

against the increase of risk. But that, being a question of fact, has been conclusively settled against that contention by the verdict of the jury and the judgment of the Appellate Court. *German-American Ins. Co.* v. *Steiger,* 109 Ill. 254.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*