ADAIR, administrator, *v.* SOUTHERN MUTUAL INSURANCE COMPANY.

1. A provision in a policy of fire-insurance, declaring it shall be forfeited "by any change in the use or condition of the building, including additions or repairs, or by the erection of other buildings, or in any other manner by which the degree of the risk is increased, unless due notice is given to the company and a new agreement is entered into," applies to such changes as are of a permanent nature, and not to mere temporary changes in the use and occupation of the premises. Therefore a mere temporary use of a machine for threshing grain for a few hours on the premises where the insured property is located will not per se work either a forfeiture or a suspension of such policy.

2. If, however, the insured, or one to whom he has entrusted the entire custody of the property and given full freedom in its use, should, by doing any act or acts which one in the exercise of ordinary care and diligence would not do under like circumstances, so change the use and occupancy of the premises as to materially increase the hazard of the insurance, the insurance company would not be liable for a loss directly resulting as a consequence of such increase in the risk.

3. There was sufficient testimony introduced by the plaintiff in this case to require the submission to the jury of the issue of fact as to whether or not there had been such negligent use of the property in question as to materially increase the risk of insurance and to cause the damage complained of; and the judge therefore erred in granting a nonsuit.

Argued March 23,— Decided April 21, 1899.

Action on insurance policy. Before Judge Kimsey. Hall superior court. August 13, 1898.

*W. R. Hammond,* for plaintiff.

*Erwin & Erwin* and *S. C. Dunlap,* for defendant.

LEWIS, J.    Suit was brought by Augustus D. Adair as administrator of the estate of Sarah C. Hudson, deceased, against the Southern Mutual Insurance Company, the same being an action for the recovery of a loss on a policy of fire-insurance.

This policy was issued to the plaintiff on the 22d of January, 1897, and "insures estate of Mrs. Sarah C. Hudson against loss or damage by fire to the amount of twelve hundred dollars for the term of one year," one thousand dollars of said sum being on a house that was occupied by the family of the deceased as a dwelling, and the balance on furniture in the house.    After plaintiff's evidence had closed, the judge granted a nonsuit on motion of defendant's counsel, upon which error is assigned by the plaintiff in his bill of exceptions.    It appears from the record that at the time of the fire the premises were in possession of the husband of deceased, who, with his children, occupied the dwelling.    He had a small quantity of wheat that had been placed on the premises where the dwelling was located, and had procured the owner of a threshing-machine run by an engine to move his machine on the premises for the purpose of threshing this wheat.    The engine was located about eighty-five feet from the dwelling.    It had no spark-arrester.    The separator was located about half-way between the engine and the house.    As the grain was being threshed, the straw gathered near the separator, some of it falling within a few feet of the dwelling.    The work of threshing the grain required only about two hours.    When it commenced the weather was calm, a gentle breeze blowing from the house towards the engine.    Plaintiff's witnesses testified that they regarded the house in no danger from fire with the weather in that condition; that there were a number of workmen engaged about the machinery, some ten or fifteen; and that even if a spark from the engine had ignited the straw, it could readily have been extinguished without material danger to the house.    The owner of this machine testified that he had been engaged in such business off and on for ten or fifteen years, using the same character of engine he had then, threshing thousands of bushels of grain often in a season, and he never before this fire knew a pile of straw to catch fire from the engine; that often the engine was sta-

tioned near houses, barns, stables, etc., as this one was on the day of this fire, and no loss from fire had ever occurred. Plaintiff testified to the same effect. After the work was about half over, there came an unexpected and sudden gust of wind, called by the witnesses a "dry storm," which blew very violently from the engine towards the dwelling. It is described as coming in a whirl, and as being one of the most violent winds plaintiff ever saw, except a cyclone on one occasion. About the same time fire was noticed in the straw. It was presumed it came from a spark from the engine, though the witnesses did not know that as a fact. Strong efforts were at once made to extinguish it, but the wind blew so violently as to carry the straw against the house, fan the flames and blow them for many feet beyond. This wind blew the belt from the machinery. The efforts to save the house proved fruitless, and it was destroyed.

1. The only portion of the policy sued upon material to be considered in determining the issues involved in this case is the following clause: "Policies shall be forfeited, first by any change in the use or conditions of the building, including additions or repairs, or by the erections of buildings, or in any other manner by which the degree of risk is increased, unless due notice is given the company, and a new agreement entered into." It is insisted by counsel for defendant in error that the use of these premises by placing thereon this machinery and using the same in threshing grain amounted to a forfeiture of the policy, especially as it caused the fire which destroyed the property insured. We do not think, in the first place, that the clause has any reference to such temporary use of the premises, but that it refers to changes in the use or condition of the buildings, or to changes in any other manner of a permanent nature, by which the degree of risk is increased. Where premises are occupied as a home on which is located the dwelling of a family, the use of them is constantly susceptible to changes of a temporary nature for the convenience of the occupants and to facilitate the conduct of business pertaining to the industries of the members of the household. We think it would be going a long way towards construing these policies liberally in favor of insurance companies, as well as liberally in favor of

the doctrine of forfeiture, to hold that it was intended by the contract that every such temporary change which may for the moment increase to some degree the risk of fire would necessarily work a forfeiture of the policy at the option of the company. There is no person, perhaps, so diligent as to live from day to day with an equal and uniform degree of caution against accidents of this sort. An important thought to consider in this connection is, that while a permanent use of the premises in a certain manner from day to day might materially increase the hazard from fire, yet a mere temporary use for a few hours, while the occupants are vigilant and on the alert to prevent fire, might not be considered as a material risk at all, although the dwelling may be in a little more danger from fire on such special occasions than is generally the case.

We think our view of the construction that should be given the terms of the clause above quoted is demanded by the well-known elementary principle of law governing the construction of such instruments, namely: first, they should be construed strictly against the company or party preparing them; and second, they should be so construed as to avoid, if possible, a forfeiture. We are satisfied that these views are sustained by a decided weight of authorities, some of which we will now briefly allude to, to show the general trend of judicial decisions on this line. In discussing this provision in policies, touching the use and occupancy of premises so as not to increase the risk from fire, we quote the following from 7 Am. & Eng. Enc. L. (1st ed.) 1035: "The change contemplated by the provision is not a mere temporary or incidental change, but a permanent and substantial change." Quite a large number of authorities are cited to support the text; and in this connection we call attention to instances given on page 1034 of the same volume, which have been held by courts not to constitute a change: "The making of repairs to a dwelling-house; shutting down a factory temporarily; running the engine and certain shafting of a mill or factory at night, when the policy recites, 'run by daylight only'; changing from a dwelling to a boarding-house; changing occupants; mixing and keeping paints in a barn described in the policy as 'used for hay, straw, grain unthreshed,

stabling and shelter,' while painting the house on the same premises; ceasing to occupy the premises; lighting temporarily with gasoline; mortgaging the property insured." In the case of Westchester Fire Insurance Co. v. Foster, 90 Ill. 121, it was held that: "An occasional occupation of a room of a building insured, by a carpenter in his business, is not such a violation of a clause in a policy, which forbids that during the term of insurance the premises should be used for any trade or business denominated hazardous, as will defeat a recovery in case of loss. An occasional day's work by a carpenter in a part of the house will not avoid such a policy." In Loud v. City Mutual Insurance Co., 2 Gray, 221, it appeared that by express directions of the assured a certain stove in the building was not to be used, the same being in an unsafe condition. The owner allowed the house to be occupied temporarily as a shelter for the crew of a vessel, who built a fire in the stove for one night. It was held that such a temporary use did not void the policy. It appeared in that case that the house was actually destroyed as a result of the fire being kindled in the stove. In the case of Williams v. Mutual Insurance Co., 31 Me. 219, it was decided that a warranty in the insurance of an unfinished dwelling-house which was in the process of construction, that there were to be no stoves in it, must be understood to mean that no stove is to be habitually kept and used in it as stoves are ordinarily kept in dwelling-houses, and that the use of a stove for a few days for a purpose connected with the finishing of the house is not a violation of the warranty. In Smith v. German Insurance Co., 30 L. R. A. 368 (Michigan Supreme Court), there was a stipulation in the policy sued on that it should be void "if there be kept, used, or allowed on the above-described premises, benzine, naptha, or other explosive." The court decided in that case that "gasoline is not 'kept, used, or allowed' on the premises insured, within the meaning of a provision for avoiding the policy, by leaving a five-gallon can containing gasoline in the building for a number of days for use in burning off old paint preparatory to repainting the building."

The clause of this policy which we have been construing we do not think amounts to anything more or less than a provi-

sion employed in our Civil Code, and it would constitute a part of the contract between the parties whether they made any stipulation in reference thereto or not.    Section 2100 of the Code declares: "Any change in the property, or the use to which it is applied, without the consent of the insurer, whereby the risk is increased, voids the policy."    The case of *Alston* v. *Greenwich Ins. Co.*, 100 *Ga.* 282, cited by counsel for defendant in error, we do not think in point.    It appeared in that case that the insured had permitted another person to store a large quantity of hay in the storehouse wherein his own goods, covered by the policy, were contained, and it also appeared that the hazard was thereby increased.    It was held that a nonsuit was proper, under a provision in the policy that the same should be void if the hazard be increased by any means within the knowledge or control of the insured.    But manifestly, under the facts of that case, the change made in the use of the house was of a permanent nature.    The hay was stored in the house for the purpose of making sales thereof, and was as permanently located there as the goods themselves which were insured. If a mere temporary change in the use or occupation of the premises which increases the risk of insurance per se forfeits the policy, then the policy is void whether any loss results from such increased risk or not, and even if the change is removed by the insured and the premises restored to their original condition without any loss occurring to the property, unless, of course, the insurance company, either expressly or by implication waives its right of forfeiture.    Hence, if the use of the premises complained of by the defendant in this case worked a forfeiture of the policy, it would have been void at the option of the company, even if the machinery and inflammable matter had been removed without having caused injury from fire. Manifestly, we think, it was neither the intention of the provision in the policy above quoted, nor of section 2100 of the Civil Code, that this contract of insurance should have such a construction.    There is authority, however, to sustain the position that while a temporary increase of risk could not operate per se to forfeit the policy, it would have the effect of *suspending* it during the existence of such risk.    See 3 Joyce, Ins. § 2239,

and authorities cited. There is quite a difference between forfeiture and suspension. In the latter case the policy is simply inoperative during the time of the suspension. Hence it follows that when the cause of the suspension is removed the policy is revived and continues in force. But not so in case of forfeiture; for the policy would continue absolutely void unless a waiver occurs as above indicated. But even in case of a risk simply suspending a policy, if the loss by fire occurs during the existence of the risk, there is no liability upon the insurer, although the fire was in nowise the result of such increase of risk. To illustrate: If this property had been destroyed by fire during the time of the operation of the machinery materially increasing the risk, then there could be no recovery, though the fire was in nowise the result of such increase of risk, but was owing to some accidental cause entirely unconnected with the change made in the use of the premises. On the other hand, if under the contract neither a forfeiture nor a suspension exists, the company would be liable. But we do not think such a temporary use of the premises even operates to suspend the policy in the sense above indicated. No such construction can be placed on section 2100 of the Civil Code. That refers to such permanent change, as above shown, which "voids the policy," that is, works an absolute forfeiture. The same thing is true of the contract itself. It does provide for a forfeiture on certain conditions, but nowhere for a mere suspension. What power, then, have the courts to interpolate into the agreement between the insurer and the insured a condition or stipulation not contemplated either by the law or by the contract between the parties?

2. But if the loss directly results from a mere temporary and fleeting change in the use or occupation of the property insured or of the premises immediately surrounding it, and a material increase of the hazard of insurance is caused by such use, then there still may be non-liability of the company, not growing out of a suspension of the policy by its terms, but from other principles of law sufficiently general in their nature to be applied to such cases. As a rule, no person can recover for an injury caused by his own consent. Under section 2322 of the

Civil Code, this has been especially applied to injuries by rail-road companies, and under section 3893, to torts generally. Under section 3830, if a plaintiff by ordinary care could have avoided the consequences of defendant's negligence, there can be no recovery. These provisions apply to torts or to injuries done by another. But that is not this case, which is an action for loss insured against by contract. There are other provisions of the code which relate directly to such contracts. Section 2096 provides that "The assured is bound to ordinary diligence in protecting the property from fire, and gross negligence on his part will relieve the insurer. Simple negligence by a servant, or the assured, unaffected by fraud or design in the latter, will not relieve the insurer." It is difficult to get the exact intention of the legislature from these words. They bind the assured to "ordinary diligence," and then in the next clause of the same sentence seem to relieve the insurer only in case of "gross negligence" by the insured. A want of ordinary diligence does not, of course, necessarily imply gross negligence. Nor does the following sentence relieve the difficulty: "Simple negligence," etc., "will not relieve the insurer." Section 2898 of the Civil Code declares that the absence of ordinary diligence "is termed ordinary neglect"; and section 2899 calls the absence of extraordinary diligence "slight neglect." Now as to whether the words "simple negligence" in section 2096 mean *ordinary* or *slight* neglect, we are left absolutely in the dark. In view, however, of the ambiguity of that section, we think we are authorized to seek aid in its construction by reference to section 2100, which provides that any change in the property or the use to which it is applied, whereby the risk is increased, voids the policy. We have already seen that a mere temporary use, not causing such loss, was not intended to have this effect. But we think a fair construction of all the law bearing on this subject would render the insurer not liable, if the loss directly resulted from a temporary change in the use of the property by the assured, so materially increasing the hazard of insurance as to make it apparent to a person of ordinary intelligence and of reasonable or ordinary care and diligence that the danger from fire was

thereby enhanced. Such a construction would be consistent with the general principle of law, that no one can recover for an injury which was the result of his own negligence..

This policy was taken out in the name of the administrator as such, who was simply the representative of the estate intended to be protected by the insurance. At the time of the fire it was occupied as a home by the husband of the deceased and her children, they being her only heirs. The record is not clear or definite as to what sort of contract, if any, existed between the administrator and the husband touching the occupancy of the house. We infer, however, that the husband had absolute custody of the premises and had perfect freedom to use the same in the conduct of his business, or that he had charge of it in the interest of the estate. He was directly responsible for the acts alleged to have increased the risk of insurance and to have occasioned the loss by fire. The question whether or not his acts bound the administrator, the real party insured, was not discussed in the argument. There is authority to the effect that an increase of risk by a tenant of the insured does not void the policy unless it contains a stipulation to the effect that such an increase by the tenant will render it null and void. See 2 Beach on Insurance, §712, and authorities cited. There are also decisions cited to the contrary in the same work. We are inclined to think, however, that the correct rule on this subject is laid down by the Supreme Court of Pennsylvania in the case of Long v. Lycoming Ins. Co., 14 Ins. L. J. 622, where it was held in effect that if the act which increased the insurer's risk was that of the tenant, unknown to the landlord, it was no excuse for the infringements of the covenants of the policy. If the husband occupied these premises under the circumstances indicated as inferable from the record, he would probably be clothed with more power and dominion over the property than in the case of an ordinary tenant who had no interest in the title; and we think his acts of negligence, if any, in this particular matter would be binding on the insured.

3. The loss having resulted in this case from an alleged increase of hazard by a change in the use of the premises it

would seem practically to make no difference whether we treated the case on the theory of a suspension of the policy or on our idea of liability or a want thereof, as herein indicated; at least, so far as concerns the alleged error in the judgment granting a nonsuit.   For in either case the question in its last analysis would turn on the negligence or want of negligence of the plaintiff.   This particular question is one of fact, and when it becomes one of law on a motion to nonsuit, its correct determination depends upon the circumstances of each particular case. Questions of negligence being peculiarly for the jury in this State, in cases of any serious doubt its courts should always lean to such a construction of the testimony as will leave the matter at issue to the jury.   They should avoid encroaching upon the prerogative of that branch of the court, except in matters where the evidence is so plain and palpable as to demand a certain verdict and make any other finding shocking to a sense of justice and against human reason.   Authorities may be found whereby in similar cases the courts of other States may as a matter of law have ruled that there could be no recovery.   The safer rule, however, and the one which we think has been followed by the weight of authority, is to submit such issues to the jury.   This course has been pursued in States some of whose decisions are relied on by counsel for defendant in error, and the trend of whose adjudications seems to hold the insured to a rigid liability for any acts of negligence in increasing the danger to the property insured from fire.   In the case of Long *v.* Lycoming Fire Insurance Co., 14 Ins. L. J. 622 (Supreme Court of Pennsylvania), it was decided that the temporary use of a steam thresher near the premises of the insured property materially increased the risk to the property insured, and therefore voided the policy.   The court held in that case that as to whether or not there was such an increase was properly left to the jury.   The same course was adopted with reference to submitting such an issue to the jury in the case of Williams *v.* Peoples Insurance Co., 57 N. Y. 274, reported in Richards on Insurance, 452.   We think this case should have taken a similar direction.   We are not prepared to say, under the testimony in this record, as a matter of law that the plaintiff is not en-

titled to recover, or that the testimony demanded a finding that the destruction of this property was a result of the negligence of this tenant. Questions of negligence in such matters can not always be safely determined from mere opinions in the human mind, not founded upon observation or experience, but based solely upon abstract reasoning that to do a certain thing will necessarily increase a risk and therefore it follows that when loss results it is necessarily owing to the negligence of the party who committed the act. In this case the jury had before them the testimony of the plaintiff and the owner of the machinery, besides other witnesses, that in their opinion the temporary location of the engine where it was placed did not increase the hazard from fire. This testimony was not simply a bare opinion without reason therefor, but was founded upon facts stated by the witnesses. From their actual experience in observing and using such machinery themselves for a number of years, contiguous to houses, and from the fact that no fire before had ever occurred, and they had not even witnessed the burning of a straw pile, some reason was given for the opinion they gave and upon which they acted. In the case of Brink v. Merchants and Mechanics Ins. Co., 49 Vt. 443, it was decided that a tenant of premises insured, who had charge of all the business done thereon, and knew of all its details and processes, was a competent witness to give an opinion as to whether the business he was carrying on at the time of the fire increased the hazard of the insurer. In addition to these opinions of witnesses in this case, it further appears from the testimony that with a number of workmen on hand, even if a fire had occurred in the straw, had the weather remained in the condition it was in when the work began, there would have been no difficulty in preventing the house from igniting. Can the court then say as a matter of law, in the light of this testimony, that it shows that the plaintiff's tenant was not in the exercise of ordinary care and diligence, or that the fire was the result of his own negligence? Can it be further said that as a matter of law reasonable diligence would have required him to anticipate a violent wind-storm, such as this is described to have been, and which seems to have been the direct intervening cause that

communicated the fire to the property and produced its destruction?

We reverse the judgment of the court below, on the ground of error in granting nonsuit, without intending to intimate, of course, any opinion in regard to the weight of the testimony, except to say that in our opinion there was sufficient evidence in the case upon which to submit to the jury the controlling issue as to whether or not the fire was the result of the negligence of the plaintiff or his tenant, and whether or not the increase of risk, if there was any, was material, and was the result of a want of ordinary care and diligence on the part of the plaintiff or his agent or tenant having charge of the property.

*Judgment reversed. All the Justices concurring, except Cobb, J., who was disqualified.*