33812. FIDELITY-PHENIX FIRE INSURANCE CO.
*v.* BERRY.

DECIDED JANUARY 23, 1952—REHEARING DENIED FEBRUARY 28, 1952.

*Smith, Field, Doremus & Ringel, W. W. Mundy Jr.,* for plaintiff in error.

*C. B. Teal, J. V. Poole,* contra.

WORRILL, J. (After stating the foregoing facts.) ■ Special grounds 1-9 assign error on the refsual of the court to admit certain evidence which was offered in support of the amendment to the defendant's answer. The amendment alleged in substance that the insured premises were used, with the knowledge of the plaintiff, as a roadhouse rather than a one-tenant dwelling house and that such use, which increased the hazard, was unknown to and concealed from the defendant, and that the policy thus became null and void. Counsel for the defendant enumerated what the witnesses would testify, eight of them being offered to show that the premises were used as a roadhouse and that such was the general knowledge of the community, and the ninth being offered to show that the mercantile rate was higher than the dwelling rate and that the company would have canceled the policy had it known the building was used as a roadhouse. If the act which increased the insurer's risk was that of the tenant, unknown to the landlord, it does not void the policy. *Adair* v. *Southern Mutual Ins. Co.,* 107 *Ga.* 297, 305 (33 S. E. 78). In the absence of evidence showing knowledge on the part of the plaintiff as to the operation of a roadhouse on his premises, the evidence was properly excluded.

■ It is not necessary to consider the charge objected to in the tenth special ground, since the evidence demanded the verdict, and even if there is error it is harmless.

■ It is undisputed that the building was totally destroyed by fire and that the defendant had issued to the plaintiff a fire

insurance policy covering the building. The evidence demanded a finding that the filing of a proof of loss was waived and hence the verdict was demanded. A local agent has the authority to waive proofs of loss in the absence of a contrary provision in a fire insurance policy (*Evans* v. *Globe & Rutgers Fire Ins. Co.*, 40 *Ga. App.* 375, 149 S. E. 798), and any act or conduct of a local agent in waiving the necessity of filing proof of loss would be the act or conduct of the defendant. *Concordia Fire Insurance Co.* v. *Hardman*, 63 *Ga. App.* 320, 322 (11 S. E. 2d, 79). The evidence shows that the local agent led the plaintiff to believe and believed himself, that ample notice had been given and nothing remained to be done by the plaintiff. The plaintiff testified as follows: "When I learned that my house was burned down, I notified Mr. Lee Parker. Mr. Parker stays up here in the bank. He wrote the policy. He took the application. As to who I furnished my application to—I didn't write nothing down, I just went in and told him, and he took the name and all that and told me to come back in the morning and get the policy. At the time the fire happened, the premiums were all paid. I paid these to Mr. Parker. Nobody else collected any premiums except him. I did not have any dealings with a soul other than Mr. Parker. When the fire occurred I took it up with Mr. Parker. Straight ahead the same day. I found him in the bank. I walked in the bank and he was talking to another man, when he got through talking to this man I told him my house had burned down. He didn't look very bright, he said he would go out and see about it, if it was a total loss, he just asked, you know—He asked me one or two questions, when it was, if it was a total loss. He didn't ask me nothing about how it happened, he might have asked when, I guess he did. You ask me what if anything Mr. Parker said about paying the loss—he says, 'I'll see about it in a few days and probably have your money right away, I'll see about it and do all I can.' That was the morning after the fire occurred the night before—the first time. As to whether or not Mr. Parker had me sign any kind of written statement, I don't think so, if he did I don't remember it. He wrote something down, I don't know what it was, I didn't pay no attention, but I don't think I signed it. As to whether that was before or after I had told him all about it—he

just had a little sketch, I don't think I signed any kind of form. As to whether he intimated to me about wanting any further statement, written statement or anything, I went back a dozen times over the period, and—I kept going back and back and he would say, 'Just in a few days I am expecting something,' and I finally went after about six months and told him, 'If you don't pay me I am going to sue you.' He says, 'Don't go to a lawyer, they are going to pay it, they will pay it, don't sue,' and I gave him a month or something like that, I don't know· exactly, and he wouldn't give me any satisfaction and I went to a lawyer. You ask me if during this time, about six months, whether or not I was under the impression from what Mr. Parker had said that they were going to pay me—I thought they were. I thought for a long time that he was going to get it settled, he kept letting me think I was going to get it anyhow, that's what I gathered."

Lee Parker, the local agent, testified as follows: "I know Mr. Berry. I remember issuing a policy for him, for a house out on the Esom Hill Road. I remember about the fire that happened out there. Mr. Berry came and reported the fire to me. He reported that his house had been destroyed by fire. He held a policy with the Fidelity-Phenix Fire Insurance Company. I represented that company at that time. I issued that policy. I collected the premiums. All of the premiums were paid up at the time of the fire. As to whether it was insured for $1500, it was originally insured for $500 and Robert came in and told me he had built some more to it and he took out an additional $1000 on it. He took the policy out in June and in October he increased it.—1947. He took out $500 originally and increased it in October the same year. Mr. Berry made a report to me about the fire, having a total loss. I immediately notified the company. As to what if anything I told Mr. Berry about paying the loss— I don't recall what I might have told him about it, I can't recall just what conversation might have taken place about it. I told him I would report it, I don't recall any conversation about paying the loss. I don't think I told him I would or would not pay it. I told him I would report it to the company and that they would take it up with him. He came back to see me after the first time. I don't know how many times he came to see me,

he came several times after I reported it to the company, I wouldn't attempt to say how many times, several times. I am sure he came that many times or more. I didn't require any further notice about the loss than what he gave me. As to whether or not I considered it sufficient notice of the fire—as far as my part of it was concerned, as local agent, I did. I reported it to the home office. The home office did not pay the loss to my knowledge. As to whether I am sure about that part of it— well, the check nearly always comes to the local agent, and I never had a check for the loss. The premiums on that policy were paid to me. I collected all of the premiums. I issued the policy. He reported the loss to me and I reported it to the company." The evidence demanded the verdict.

*Judgment affirmed. Sutton, C. J., and Felton, J., concur.*