**MATUSEK ACADEMY OF MUSIC, Inc.**

v.

**NATIONAL SURETY CORP. et al.**

**No. 10903.**

United States Court of Appeals, Seventh Circuit.

Feb. 9, 1954.

Rehearing Denied March 1, 1954.

John P. Hampton, Roger D. Doten, Chicago, Ill., for appellants.

Simon Herr, Leonard M. Spira, Chicago, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

Each defendant issued to plaintiff a mercantile open stock burglary policy in the sum of $7,500. On November 18–19, 1950, plaintiff's premises were burglarized and merchandise of a value of $15,525 was taken. Plaintiff made timely proofs of loss, and when payments were not made, commenced separate actions in the Superior Court of Cook County, Illinois. The actions were removed to the United States District Court on grounds of diversity of citizenship, and there consolidated. Trial was to the court which found the issues favorably to the plaintiff and judgment was entered accordingly. 110 F.Supp. 86.

The defendants admit that the insurance policies were in full force and effect on the date of plaintiff's loss. However, they denied that anything was due to the plaintiff under the policies, relying upon provisions pertaining to the agreement by the plaintiff that its burglar alarm system would be kept in proper working order at all times when its premises were not open for business.

The policy issued by National recites that the defendant made the insurance agreement "in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits. of liability, exclusions, conditions and other terms of this policy." Declaration No. 9 in the policy issued by National reads as follows: "Premises *are* equipped with a *Chicago Mercantile Police Alarm*, burglar alarm system, which will be maintained and kept in proper working order when premises *are not* open for business, while this policy is in force. Keys to the premises are not in possession of the alarm company. Such alarm system

is classified by Underwriters Laboratories as follows: Class A installation 3, Certificate No. *603,306, 8–16–49,* expires *8–16–52,* such alarm system is connected with an outside, central station or with an alarm gong on the outside of the premises—*gong alarm.*" [1] Under exclusions, this policy provides that "the company shall not be liable for loss or damage: * * * (d) contributed to by any change in the condition of the risk; * * * (f) occurring while the protection or service promised in items 8 or 9 of the Declarations is not maintained." Paragraph 15 of the policy conditions reads as follows: "By acceptance of this policy the named insured agrees that the statements in the Declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Item 10 of the Declarations in the Maryland Policy reads as follows: *"The A. W. Fruh and Co.* burglar alarm system *is* maintained and will be kept in proper working order and connected at all times when the premises are not open for business while this Policy is in force. Such alarm system is classified by Underwriters' Laboratories, Inc., as follows: Class *A* Installation *3* Certificate No. *603306* issued *August 16th, 1949,* expiring *August 16th, 1952,* and protects: * * * (c) with screens (or foils and traps) all accessible windows (except stationary show windows), and all doors, transoms, skylights and other openings leading from the premises, *Yes.* Such alarm system is connected with an outside central station or with an alarm gong on the outside of the premises, *gong.* Keys to the premises *are not* in the possession of the alarm company." [1] The exclusions were similar to the National policy, heretofore quoted,

and the same is true as to conditions and limitations.

The defendants issued their respective burglary policies for uniform rates of premium. Where premises were protected by a burglar alarm system and the type of system installed was approved, the premium charge was less for a given amount of coverage than for the regular burglary policy. To illustrate, the premium on the $7,500 policy issued by Maryland to plaintiff was $80.63 less than the rate for $7,500 worth of regular burglary insurance.

The Chicago Mercantile Police Alarm System, owned by Clarence Novak, installed a burglar alarm system with outside gong on the premises of plaintiff on August 16, 1949, some months prior to the issuance of either of the policies in issue. Mr. Novak had secured a classification for this system by Underwriters' Laboratories, Inc. of Chicago, Illinois, under Certificate No. 603,306, as "Class A, Installation 3." The certificate embodied the following proviso: "Underwriters' Laboratories, Inc., reserves the right to inspect this equipment at any time, and to revoke this certificate if the entire system is not properly maintained under contract with the installing company." The installation on plaintiff's premises was pursuant to a written agreement, but it was stipulated that neither defendant had any knowledge of said agreement.

Neither of the defendant insurance companies was a member of Underwriters' Laboratories, Inc. Neither had any financial interest in or control over Novak, doing business as Chicago Merchants Police Alarm Systems, nor of The A. W. Fruh and Company, manufacturer of the burglar alarm system.

On the morning of Saturday, November 18, 1950, plaintiff's burglar alarm was in working order. However, when the office manager and Matusek, the president of plaintiff, were about to leave

---

[1]. The italicized items of this Declaration were filled in after the necessary information was obtained from the insured; the balance is a printed part of the contract of insurance.

the premises at 7:00 P.M. on that day, and attempted to turn on the alarm, it was found to be not in working order. On checking the system, a broken wire in the rear was repaired, but still the system would not operate. The business manager immediately attempted to call Novak by telephone, but was unable to locate him. A girl in Novak's office informed him that due to the day and hour, no-one was available to make repairs until the following Monday. The business manager informed Matusek that he had notified the Chicago Mercantile Police Alarm System of the failure in the alarm system. About 8:45 P.M. on November 18, the plaintiff's sales manager called at the plaintiff's premises to take Matusek to the airport. They again tested and found the alarm system was not working, whereupon Matusek himself telephoned to the Chicago Mercantile Police Alarm System, advising whoever answered of the failure of plaintiff's burglar alarm to operate, and was again informed that no-one was available to make repairs until the following Monday.

Between 8:45 P.M. on November 18, and 1:30 P.M. on November 19, at a time when none of plaintiff's officers or employees was present, plaintiff's premises were burglarized and merchandise, principally accordions, of the value of $15,525 was taken.

■ As this is a diversity case and the contracts were executed and were to be performed in Illinois, the law of that State is applicable. Noting that, under Illinois law, insurance contracts should be liberally construed in favor of the insured, the trial court held that a literal compliance with the requirement of keeping the burglar alarm in proper working order when plaintiff's premises were not open for business was not required. The court found that substantial compliance by plaintiff had been shown, and held it was sufficient. Relying upon and quoting from Kaplan v. United States Fidelity & Guaranty Co., 255 Ill.App. 437, affirmed 343 Ill. 44, the court held that the provision in the policy as to maintaining the burglar alarm in proper working order was in the nature of a condition subsequent, hence that a substantial compliance therewith was sufficient. The court said: "Unless such contract expressly provides that literal compliance with any condition or declaration is a condition precedent to the insurer's liability, this court subscribes to the view that they are considered in the nature of conditions subsequent and that substantial compliance is sufficient."

The trial court suggested that the insurers had imported an external standard into the insurance contract, undoubtedly referring to the statement in each policy that the burglar alarm system on the premises was classified by Underwriters' Laboratories as "Class A Installation 3 Certificate No. 603306." The court stated that the plaintiff was bound by a regulation of Underwriters' Laboratories, Inc., which provided that calls for service which were received after twelve o'clock noon must be serviced by the end of the next business day, and pointed out that plaintiff could not have sought service elsewhere on the evening of November 18 without violating the terms of the Underwriters' certificate issued to it.

■ If the terms of the insurance contract were ambiguous, Illinois courts would construe the ambiguous provisions most favorably to the insured. In Lesher v. United States Fidelity & Guaranty Co., 239 Ill. 502, 503, 509, 88 N.E. 208, 210, the court said: "This court is committed to the rule that, where a contract of insurance leaves room for construction, courts are inclined against the construction that will impair the indemnity. If the contract is susceptible of two interpretations, the interpretation most favorable to the assured will be adopted. * * * Here, however, there is no ambiguity. The language used is as clear, plain, and definite as the English language is capable of making it."

■ Parties to insurance contracts are free to make such agreements as they see fit, and in the absence of ambiguity

the courts will enforce their contracts unless they clearly violate the law or are contrary to public policy. Zitnik v. Burik, 395 Ill. 182, 187, 69 N.E.2d 888. The applicable Illinois rule is stated in Hancock v. National Council of Knights and Ladies of Security, 303 Ill. 66, 73, 135 N.E. 33, 35: "Parties competent to contract may enter into such agreements with each other as they see fit and it is the purpose of the law and function of the court to enforce their contract, if not in violation of law or opposed to public policy. Courts do not make contracts for parties who are fully capable of making their own agreements, and, if there is no ambiguity about a contract, the courts cannot permit a construction contrary to its terms. * * *"

■ The clause of each insurance policy which we must carefully examine is the exclusion clause which states, "The company shall not be liable for loss or damage * * * occurring while the protection or services promised in * * * the Declarations is not maintained." The protection so promised by plaintiff was that it would keep its burglar alarm system in proper working order and connected at all times when its premises were not open for business. No exception was stated nor can any be implied. There is nothing ambiguous about the promise which plaintiff made. Plaintiff's burglar alarm was not in proper working order on the evening of November 18 and before 1:30 p. m. on November 19, at a time when its premises were not open for business and when the burglary occurred. On oral argument before this court, when requested to point out the ambiguity which would justify only substantial compliance with the exclusion clause, counsel for plaintiff referred to the following statement in his brief: "To tell him on one hand that he must keep in proper working order at all times the alarm signal service, and at the same time take away from him the power to keep it in proper working order, except as specified by a referred to agency, creates ambiguity which the courts have said will not defeat the protection promised."

The difficulty with this contention is that neither insurance company was a party to the maintenance agreement between plaintiff and Novak, nor were they bound by it. This agreement was made some months before the insurance policies were issued. It was stipulated that prior to the time of the trial the insurance companies knew nothing of the installing contract. Furthermore, the insurance companies had no interest in or connection with Underwriters' Laboratories, Inc. The fact that the insurance policies described the classification of the alarm system in terms of a certificate issued by Underwriters' Laboratories to the plaintiff in no way committed the insurance companies to be bound by Underwriters' Laboratories' rules and regulations.

Plaintiff's argument, apparently approved by the trial court, appears in its statement that "tacitly, if not directly, the insurers advised the insured that compliance with the regulations of the Underwriters' Laboratories would sustain for him a right of recovery in the event of loss." We think there is nothing in the insurance policies or in the evidence that sustains such an assumption.

■ The exclusion clause in each policy stated a condition or a risk which was not insured against. Plaintiff chose to purchase policies each containing the declaration and exclusion clause here in question. The premiums for policies without such clause, and which would have covered the loss which plaintiff sustained, would each have cost 25% higher. We think we must here apply the general rule: "There can be no recovery where the loss is within one of the exceptions or exclusion clauses of the policy". 45 C.J.S., Insurance, § 886(b), page 955.

Plaintiff has cited cases from various States, including one from Illinois, where the insurance policy provisions pertained to the maintenance of sprinkling systems or a watchman on duty. However, in

each case the form of the policy provision must be considered. Thus, in Firemen's Ins. Co. v. Appleton Paper & Pulp Co., 161 Ill. 9, 43 N.E. 713, the policy provided that the premises were equipped with an automatic sprinkler system in consideration of which the amount of the premium was reduced. A fire occurred while plaintiff was changing the sprinkling system, but plaintiff was permitted to recover on the policy. The court there said, 161 Ill. at page 14, 43 N.E. at page 714: "The sprinkler equipment was merely described as a part of the property insured, and there was no condition or stipulation that it should be kept or maintained, * * *. If the existence of the sprinkler equipment was a condition of the risk, it might have been easily provided for; but the policy contained no condition of that kind." Had the policy contained a clause excluding insurer from liability from loss during a period when the sprinkler system was not maintained in proper working order, it seems apparent that the Illinois court would have given effect to that provision and denied recovery.

A case which on the facts is much like the case at bar is Litzman v. Metropolitan Cas. Ins. Co. of New York, 1951, 2d Dept., 278. App.Div. 853, 105 N.Y.S.2d 361. There the provisions of the policy as to the burglar alarm being kept in working order and the exclusion clause were practically identical to those in the policies before us. The alarm system was there classified by Underwriters' Laboratories as Class A, Installation 3. Just before locking the store for the night insured discovered that the burglar alarm system was not in working order. The installing company was contacted by telephone, but informed insured that a repairman was not available until the following morning. Insured then closed the store, and during that night the burglary occurred. The trial court granted the motion of the insurer to dismiss the actions on the merits. The appellate division affirmed, as the memorandum of the decision stated, "on the ground that the assured had breached the contract of insurance by leaving the premises without the protection of a burglary alarm system and by failing to regularly keep books and accounts."

The district court should have entered judgment for the defendants.

Reversed.