42961. PACIFIC INSURANCE COMPANY v. R. L. KIMSEY COTTON COMPANY, INC. et al.

ARGUED JULY 6, 1967—DECIDED SEPTEMBER 15, 1967— REHEARING DENIED OCTOBER 3, 1967—

*Matthews, Maddox, Walton & Smith, Oscar M. Smith, Smith, Cohen, Ringel, Kohler, Martin & Lowe, Sam F. Lowe, Jr.,* for appellant.

*Candler, Cox, McClain & Andrews, Edward Andrews, E. Lewis Hansen, Rogers, Magruder & Hoyt, Dudley Magruder,* for appellees.

HALL, Judge. The determinative issue is whether the insured breached the following provision of the contract: "Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control and knowledge of the insured. . ."

The contract also contains the following provisions: "Fire protection—In consideration of the rate at which this policy is written it is stipulated that the insured shall exercise due diligence in maintaining in complete working order all equipment and services, installed for the detection, prevention and extinguishment of fire in the property covered by this policy and under the control of the insured. It is further stipulated that no change shall be made in any sprinkler system . . . unless immediate notification is given to the rating bureau having jurisdiction." "Alterations and Repairs Clause—Permission granted to make alterations, additions and repairs to the above described building(s), . . . This clause does not waive or modify any of the stipulations of the Fire Protection Clause."

The evidence showed that after the contract was entered into the insured installed a gas fired oven for use in coating carpet with latex. This oven replaced a smaller infrared oven used for the same purpose, and was more modern and efficient, better insulated, and had better safety features than the old oven. As an incident to the oven replacement a representative of the company which installed it recommended that 286-degree sprinkler heads be installed over the oven, where heat might build up between the oven and roof. The use of such high pressure heads in such places was standard procedure. The sprinkler heads were ordered. About a week before the fire while the new oven was in operation one of the existing sprinkler heads was activated and water pouring from it damaged motors of the oven and other property in the area. Employees of the insured cut off the valve controlling the water supply to the sprinkler heads over that area to prevent further damage. At this time two

representatives of the insured contacted the manufacturer to check up on delivery of the sprinkler heads they had ordered. The order arrived at the plant on Saturday before the fire occurred on Thursday. When the new sprinkler heads arrived on Saturday the maintenance foreman put in the ones that he could get to without having a helper to hold a ladder. This was about 60 percent of them. He did not have an assistant there that day to hold the ladder. The sprinkler head that had blown out the week before was one he couldn't get to without a ladder. It was not replaced and the valve controlling the water supply to the sprinkler system in this area was still off when the fire occurred. Plant employees testified that at the time they received the new sprinkler heads the plant had the largest order it had had for a long time, from a new customer, and the plant worked on this order Saturday and Sunday to try to meet the promised delivery date, and ran some orders through the oven. They testified that the oven could not be run and the sprinkler heads installed at the same time. The day before the fire the oven was in use and it had been cleaned and cut off 30 or 40 minutes before quitting time.

It appears from the above evidence which was not contradicted, that the new oven was in use much of the time after the new sprinkler heads were received and until the fire occurred. And it might have created a hazard (fusing of sprinkler heads and pouring of water on equipment and other property) if the one damaged sprinkler head had been replaced and the water valve turned on with some of the lower degree sprinkler heads still in place. Irrespective of questions of the insured's diligence with respect to the sprinkler system before the time it received the new sprinkler heads, it is not questionable that, had the insured been reasonably diligent thereafter it could have found some time and some reasonable means between Saturday and Thursday to complete the replacement of sprinkler heads so that the water valve could be turned on without creating any hazard and the sprinkler system returned to its normal state, in complete working order, in compliance with the fire protection clause of the contract. It is unquestionable that the insured, in making the alteration and repair to the sprinkler system that it had the

right and duty to make, increased the risk for an unnecessary length of time. See Firemen's Ins. Co. v. Appleton Paper & Pulp Co., 161 Ill. 9 (43 NE 713); and Charles Dowd Box Co. v. Firemen's Fund Ins. Co., 351 Mass. 113 (218 NE2d 64), where it was recognized, under policy provisions similar to those presently considered, that the insured's right to make alterations and repairs was subject to his exercising the care that prudent men ordinarily exercise about their affairs, so as not to increase the risk unnecessarily or for an unnecessary length of time. It follows that in the present case the loss occurred while the hazard of fire loss was increased by a means within the control and knowledge of the insured, and that the insurance was suspended at the time of the loss. *Alston v. Greenwich Ins. Co.*, 100 Ga. 282 (29 SE 266).

Unlike the case of *Adair v. Southern Mut. Ins. Co.*, 107 Ga. 297, 307 (33 SE 78, 45 LRA 204, 73 ASR 122) the evidence in the present case was not sufficient to authorize submission to the jury of the issue of the insured's due diligence, and there was no issue under the present policy that there was not a material increase in risk when the loss occurred. See also *Southern Mut. Ins. Co. v. Hudson*, 113 Ga. 434, 440 (38 SE 964). It is obvious from the face of this policy that it is based on the fact that the hazard of fire loss is materially increased unless all the fire prevention equipment in the insured premises is in working order. It may be conceded, as the insurer contends, that when alterations are being made, this equipment might at times not be in complete working order and an increase in hazard might exist for a time, and yet the requirement of due diligence in the fire protection clause would not be violated nor the insurance suspended because of the increase in hazard. *Adair v. Southern Mut. Ins. Co.*, 107 Ga. 297, 299, supra; Anno. 23 ALR 27, 32-34. In other words, all the rights and obligations of the contract must be recognized, exercised and performed realistically and reasonably.

The insured relies on Cummer Lumber Co. v. Associated Mfrs. &c. Corp., 67 App. Div. 151 (73 NYS 668), where it was held that the inoperation of the sprinkler system was not within the control of the insured. There the system was in need of repair

because of freezing in cold weather, and there was evidence that everything in reason was done to put the system in order but the repairs could not be accomplished before the fire occurred. Such cases in which there was evidence of due diligence of the insured to minimize the increase in hazard are not inconsistent with the reasoning of this decision. In this case the record shows without contradiction that the hazard of fire loss was materially increased while the water valve to a part of the sprinkler system was turned off for making necessary repairs and alterations to the sprinkler system, and that the insured did not use reasonable diligence in completing the repairs and alterations and thereby increased the risk for an unnecessary length of time, and that the hazard of fire loss was increased by a means within the control and knowledge of the insured.

The trial court erred in denying the defendant insurer's motion for judgment notwithstanding the verdict.

*Judgment reversed. Felton, C. J., and Eberhardt, J., concur.*

EBERHARDT, Judge, concurring. While I agree with the majority opinion, I think there is an additional reason which should be assigned for the voiding of coverage under this policy. It provided that "no change shall be made in any sprinkler system . . . unless immediate notification is given to the rating bureau having jurisdiction," and it was further provided that the rating bureau having jurisdiction was Southeastern Underwriters Association, Atlanta, which had examined and approved the automatic sprinkler system before the policy was issued. Premium was based upon the system as it stood, and would be adjusted to any changes made.

There was, without question, a change in the sprinkler system which was not immediately reported to the rating bureau, albeit the change may have been required by the change of ovens. The sprinkler heads installed and approved for issuance of the policy became activated at a much lower temperature than do the replacements in the area of the new oven because, as was explained by the witness, there was such an increase of heat from the new oven as to activate the heads then in use. To avoid that, heads of a considerably higher temperature activation point were installed and being installed. Most of the

sprinkler heads in the area of the oven had been installed, and others were in hand to complete the installation change at some convenient time, pending which the valve to the pipe supplying water in the area was closed.

Consequently, not only was there a change which increased the fire hazard by the closing of the valve so that water could not flow through the pipes and sprinkler heads, but the change made and being made was such as to result in a situation by which heat of a considerably higher temperature was held *in the oven area* of the building without activation of the heads, and it is a matter of common knowledge that the higher the temperature maintained the more danger there is of fire. This change should have been reported in accordance with the policy requirement so that the rating bureau might judge as to the increased hazard brought about and afford the company opportunity to discontinue the contract or continue it at an appropriately increased premium.