Mutual Life Insurance Company of New York, Appellee, v. Dora Wineberg, Appellant.

Gen. No. 42,376.

Opinion filed May 10, 1943. Rehearing denied May 24, 1943.

ZEAMORE A. ADER and S. G. LIPPMAN, both of Chicago, for appellant.

WINSTON, STRAWN & SHAW, of Chicago, for appellee; LOUIS W. DAWSON, GEORGE B. CHRISTENSEN, EDWARD J.

WENDROW and GERARD E. GRASHORN, all of Chicago, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Dora, widow of Isidore Wineberg, is named beneficiary in two life insurance policies issued on the life of her husband by plaintiff, for the sum of $2,000 each. Application for one policy was made August 20, 1935, for the other January 16, 1936. The policies issued August 23, 1935, and January 20, 1936, respectively. The insured died of coronary thrombosis February 29, 1936. Mrs. Wineberg demanded payment March 7, 1936. The suit in equity was brought by the insurance company April 27, 1936, to procure the cancellation of the policies on the ground that they were obtained by fraudulent representations of the insured as to his health and medical history. A motion of defendant to strike was denied. Defendant answered denying charges of fraud and pleading estoppel by reason of knowledge of plaintiff's agent of the facts as to assured's health and medical history at the times of the several applications. Defendant also filed a counterclaim at law on the policies, demanded trial by jury and moved the transfer of the counterclaim to the law side of the court. This motion was denied, the cause referred to a master, who took the evidence and reported in favor of plaintiff and overruled objections. The cause was heard on exceptions to the report. The exceptions were overruled and a decree entered, as prayed, and recommended on July 2, 1941, and defendant appeals.

First, it is said the insurance company had an adequate and complete remedy at law and equity, therefore, is without jurisdiction. In the absence of a valid incontestability clause in the policies this would be true. *Des Moines Life Ins. Co. v. Seifert,* 210 Ill. 157, 158; *Powell v. Mutual Life Ins. Co. of New York,* 313 Ill. 161; *Ramsey v. Old Colony Life Ins. Co.,* 297

Ill. 592; *Monahan v. Metropolitan Life Ins. Co.*, 283 Ill. 136; *American Life Ins. Co. v. Stewart*, 300 U. S. 203; *Chicago Nat. Life Ins. Co. v. Carbaugh*, 254 Ill. App. 82, aff'd 337 Ill. 483.

Each of the policies here in question has an incontestable clause which provides in substance that except for nonpayment of premiums, etc., "this Policy shall be incontestable after one year from its date of issue unless the Insured dies in such year, in which event it shall be incontestable after two years from the date of issue." Defendant says this clause, at least in part, is invalid and repugnant to the statute. (Smith-Hurd's Ann. Stats., § 261 (3), ch. 73, p. 635.) Defendant argues the clause in the policies contravenes the requirement of the statute as amended and in force when the policies were issued, and intentionally disregards and seeks to avoid the purpose of the amendment of 1921 (see Laws of 1921, p. 482) by which the phrase "during the life of the assured" was introduced into the statute. Defendant says that the death of the assured within the first year the policies were in force made it impossible for the policies to become incontestable within that year; that the two-year limitation is repugnant to the statute and, therefore, invalid. Therefore, says defendant, these policies will never become incontestable at law and plaintiff will forever have an adequate and complete defense for fraud at any time suit may be brought within the statute of limitations. Defendant urges the language of the statute is mandatory. It is. She argues that eliminating the two-year limitation of contestability the plaintiff has an adequate and complete remedy at law. It has. It was so held in the case of *Chicago Nat. Life Ins. Co. v. Carbaugh*, 254 Ill. App. 82, aff'd 337 Ill. 483.

The question, therefore, seems to be narrowed down to a determination of whether the two-year provision in the policies is invalid or repugnant to the statute.

We hold it is not repugnant and that the incontestable clause is not invalid. A very literal and technical construction of the statute might lead to such interpretation. This becomes quite impossible when we reflect on the history, nature and purpose of incontestable clauses in insurance policies. The letter of the law kills. It is the spirit that gives life.

In the first place, it is manifest that the incontestable clauses in insurance policies is for the benefit of the assured, that his policy instead of being uncertain may become a certain and absolute promise to pay. The object of judicial construction of a statute is to ascertain the intention of the legislature. The construction for which defendant contends would require us to hold any limitation period of incontestability invalid after the death of the assured. This is impossible for the reason that such an interpretation would quite destroy the value of such a policy and also because such a construction would be absolutely inconsistent with the last clause of section 3 of the statute. The section with material portions of the enacting clause reads as follows:

". . . That from and after January 1, 1908, no policy of life insurance shall be issued or delivered in this State or be issued by a life insurance company organized under the laws of this State, unless the same shall provide for the following: . . .

"(3) That the policy, together with the application therefor a copy of which application shall be endorsed upon or attached to the policy and made a part thereof, shall constitute the entire contract between the parties and shall be incontestable after it shall have been in force, during the lifetime of the insured, for two years from its date, except for non-payment of premiums and except for violations of the conditions of the policy relating to the naval or military service in time of war, . . . provided, that the application there-

fore need not be attached to or made a part of any policy containing a clause making the policy incontestable from date of issue.''

By clear implication the last clause of section 3 authorizes the issuance of insurance contracts incontestable from the date the policy is issued. The words show not only a legislative intent to permit the issuance of such policies but also show affirmatively it was the intention to favor such policies. It is perfectly apparent, we hold, the intention of the legislature was to prescribe that each policy issued should contain an incontestable clause and also direct the minimum requirements of such a clause as to the period of contestability. In that respect the statute is, as the language shows, clearly mandatory. However, the statute does not forbid the issuance of any policy with an incontestable clause more favorable to the insured than that directed by the statute. As already stated, the section indicates that a policy incontestable from date of issue is permissible and favored.

The phrase ''during the lifetime of the insured'' was introduced into the statute by the amendment of 1921 (see Illinois Laws of 1921, p. 482). The amendment was clearly intended for the benefit of the insurance company rather than the assured. Its literal interpretation would result in the removal of the incontestable feature from every policy where it should happen that the assured died before the policy became incontestable. It is quite impossible to think it was the intention of the legislature not only to permit the insertion of a clause of this kind but to forbid an insurance company to write any other kind of a policy.

Defendant suggests two reasons for the enactment of the amendment of 1921. The first reason, she says, was to provide an adequate defense at law where actions were brought on policies after the expiration of the contestable clause, and second, to make it unnecessary for insurance companies to go into equity while

widows were still in mourning and thus denying to them the sacred right of trial by jury.

We are not convinced the defendant has guessed aright the reasons for this amendment. On the contrary, a careful reading of *Monahan v. Metropolitan Life Ins. Co.*, 283 Ill. 136, shows that although the policy there involved was issued prior to the enactment of the statute directing that certain provisions should be inserted in life insurance policies, and although the policy contained a voluntary provision that it should be incontestable after two years except for nonpayment of premiums or for fraud, the insurance company argued this should be construed to mean that the two-year period must have elapsed "in the lifetime of the insured." The Supreme Court held otherwise. The rehearing in that case was denied April 9, 1918.

In *Ramsey v. Old Colony Life Ins. Co.*, 297 Ill. 592, the policy contained a clause of incontestability after one year from the date of issue, if premiums were paid. The insured died within the year. No administrator was appointed until July 19, 1918. He brought an action in assumpsit on the policy on November 7, 1918. The insurance company interposed a plea of fraud not discovered until after the death of the insured. The Supreme Court held that the death of the insured neither enlarged or abridged the right of the insurance company, and that the incontestable clause continued in force after the death of the insured, even though the death occurred before the expiration of the limitation. The insurance company contended that the rights of the parties became fixed by the death of the insured; that a cause of action accrued, at that time, and that if the policy was then contestable it remained contestable no matter when suit might be brought to enforce it. The court said in the *Ramsey* case that counsel for the appellant regarded the decision in the *Monahan* case "as fundamentally erroneous," but at any rate distinguishable. The court,

however, did not agree. The *Ramsey* case, adhering to the rule laid down in the *Monahan* case, was decided April 21, 1921, and rehearing denied June 9, 1921. It is pretty clear the object of the enactment of 1921 was to introduce into the statute the construction for which the insurance company had contended in the *Monahan* and *Ramsey* cases. Neither the mourning of widows nor the right of trial by jury were persuasive with the legislature. However this may be, we do know there is no decision by any court of Appellate jurisdiction in this or in any other State, so far as we are advised, which holds a policy illegal and contrary to the statute because it omits this phrase. We do know, and this is important (see *Chicago Title & Trust Co. v. Central Republic Trust Co.*, 299 Ill. App. 483, 496), that the insurance department of this State has for more than 20 years regarded the phrase as directory rather than mandatory. We also know that the third division of this court, in *Metropolitan Life Ins. Co. v. Consento*, 297 Ill. App. 450, has held that a policy issued in this State, from which the phrase was omitted, was nevertheless valid and enforceable.

In the *Consento* case, the opinion, after stating the general rule that incontestable provisions as directed are valid, went on to say that accordingly it was also valid for the policy to contain an incontestable clause which is shorter and, therefore, more liberal than that required by the statute, although the insurance might not make the period of contestability longer or the provisions thereof more onerous than ''required by statute.'' This also has been the construction of a similar phrase found in the contestable clause of the statute in the courts of New York. *Kocak v. Metropolitan Life Ins. Co.*, 237 App. Div. 780, 263 N. Y. S. 283.

In Insurance Law and Practice, vol. 1, sec. 311, by Appleman, 1941, the author says:

''It is often provided by statute that policies issued within that state shall contain clauses setting up a

certain incontestable period. . . . Accordingly, it is also valid for the policy to contain an incontestable clause which is shorter, and therefore more liberal, than that required by statute, although the insurer may not make the period longer or more onerous that the period required by statute.''

In the *Consento* case, already cited, the third division of this court said:

''The time limit fixed by statute is controlling but, as we have indicated in our opinion, this may be waived or the time may be fixed at one year, or the time limit omitted, and the insurance company would be bound by the agreement made when it entered into an insurance contract with the insured.''

In the case of *Joseph v. New York Life Ins. Co.,* 308 Ill. 93, the policy contained a one-year limitation instead of the two provided by statute. The Supreme Court said:

''The language of the policies went further than the requirements of the statute by limiting the contestable period to one year instead of two.''

The history of the incontestable clause in this State will be found in two highly interesting articles, 19 Illinois Law Review 226, and a note by the same author in the same review, vol. 25, p. 88. In the note last named the author says:

''The Illinois insurance laws designating the terms and provisions of policies issued and delivered in the State are permissive, not restrictive, and so long as insurance companies frame their policies within the bounds set by the statutes their policies are enforced according to their term.''

We are not unaware nor have we left unconsidered the language used by the Appellate and Supreme Courts in the *Carbaugh* case, 254 Ill. App. 82, and 337 Ill. 483. The defendant quotes and relies upon this language. In our opinion it simply shows how far

afield distinguished counsel may be led by relying upon particular language when the language has been wrested from its context. We hold that neither the incontestable clause nor any part of it here is invalid, and that plaintiff was without an adequate remedy at law and was justified in bringing its suit in equity to secure cancellation.

Having arrived at this conclusion it becomes unnecessary to consider the question raised by the plaintiff, namely, that defendant cannot urge her theory on this appeal because it was not presented in the trial court, and the contention of plaintiff that the decision on the motion to transfer to the law side of the court and for trial by jury was *res adjudicata* in so far as defendant was concerned, because decided on the prior motion to strike.

The further question in the case is whether plaintiff insurance company, through its agent, had knowledge at the time the policies were accepted that the answers of the assured as to health and medical history were false. While the burden of proof was on plaintiff to prove its case by a preponderance of the evidence (*Arnhorst v. National Union,* 179 Ill. 486; *Continental Life Ins. Co. v. Rogers,* 119 Ill. 474) we hold the plea of estoppel, an affirmative one, cast on the defendant the burden of proof in so far as that plea is concerned. Moreover, in the consideration of this question we are reminded that the findings of a master, who has seen and heard the witnesses testify, when approved by the chancellor is entitled to much weight. While there has been some conflict in the decisions as to the weight to be given such findings, the recent cases seem to approve the rule that such findings of fact, when so approved, will not be reversed in an Appellate Court unless manifestly against the weight of the evidence. *Pasedach v. Auw,* 364 Ill. 491, 496; *Litwin v. Litwin,* 375 Ill. 90, 96; *Phillips v. W. G. N., Inc.,* 307 Ill. App. 1, 4; *Borovansky v. Para,* 306 Ill. App. 60,

68; *Metropolitan Life Ins. Co. v. Shattas,* 298 Ill. App. 336.

The plaintiff urges the further point that Missner was only a soliciting agent and without any authority to receive or accept any representations or information not contained in the written application and therefore, even assuming he received knowledge of the assured's condition and medical history, plaintiff would not be bound thereby. There are some jurisdictions which so hold. The weight of authority in Illinois, however, is otherwise. We have recently given attention to the law in this respect in *Nogulich v. Metropolitan Life Ins. Co.,* 317 Ill. App. 411, where we reviewed the cases applicable. It is suggested here, as it was there, that even assuming the evidence offered by the insured was true, it would tend to establish a conspiracy between the deceased and the insurance company's agent to defraud the company. Neither of the parties in this case tried it on that theory, nor was any such issue presented by the pleadings. We hold here, as in the *Nogulich* case, the knowledge of facts concerning the health and medical history of the assured by the soliciting agent may operate as a waiver and create an estoppel. This being the law in Illinois, the question here is narrowed down to whether plaintiff's agent, Missner, had knowledge of these facts when he took the application for the policies.

The evidence on this point was given by three witnesses, Mrs. Wineberg (financially interested) Morris Talmage, her brother, and Samuel Missner, the agent of the insurance company. The evidence shows without dispute that the assured and Missner had been good friends for about 17 years. Missner was in a branch office of the insurance company and has been associated with it, as an agent, since July 15, 1921. His home address was at 1623 South Clifton Park, about two blocks from the Wineberg home on Millard

avenue. He moved from this home some time after these policies were written. The Missner and Wineberg families attended the same synagogue. Wineberg, when he died, was president of the synagogue, and Missner for several years was its secretary. Missner was accustomed to visit Wineberg's home about twice a month and usually on Friday evening. They played cards together. Morris Talmage was often there and joined in the card playing. Wineberg conducted a wholesale clothing store at 847 Roosevelt Road in Chicago. The applications for these policies were taken by Missner at Wineberg's store and are in Missner's handwriting.

In 1935, Wineberg's physician was Dr. Bishkow, who executed the death certificate which stated the cause of death was coronary thrombosis. In March 1935, Dr. Bishkow was called to Wineberg's home. The doctor suggested his patient be taken to the Michael Reese Hospital. He was taken there by taxicab, and while there was under the care of Dr. Bloch, who diagnosed his ailment as a coronary occlusion, which the doctor defines as "a closing of one of the blood vessels that supply the heart muscle with blood," thus impairing its action. The doctor informed Mr. Wineberg of his condition. Wineberg remained at the hospital from March 22 to March 29, 1935. After Wineberg's return from the hospital the playing of cards was not continued, although Missner's visits to the home were. These occurred about twice a month.

Morris Talmage testifies that he was present at Wineberg's home at about the end of April in 1935, when the bell rang and Missner came in. The witness and his brother suggested a pinochle game; Missner replied, "I have something more important. I am going to sell Mr. Wineberg an insurance policy"; Wineberg replied, "Now, you know Mr. Missner, I have been ill and I could not possibly pass a medical

examination and get another insurance policy"; that Missner replied, "Well, don't let that worry you, because you are entitled to a non-medical application for additional insurance on your old policy." Talmage says Wineberg said, "Let it wait a little while. See me at the store." Talmage says that Missner, his brother and himself played the game but Mr. Wineberg did not play. He further says that at one stage of the game Wineberg expressed an inclination to join, but Missner said, "Now, Izzy, you know you shouldn't play pinochle, because that is strictly against the doctor's orders." He also says that Missner said, "You know, Isidore, you cannot play cards on account of your heart ailment." This witness says that three weeks thereafter Missner came in and again suggested Wineberg take out additional insurance; that Wineberg again told him that he would not be able to pass an examination on account of his heart ailment, and that Missner again repeated what he had said before about the non-medical application for additional insurance, and Mr. Wineberg again said to see him at his store. These are all the conversations Mr. Talmage remembers.

Mrs. Wineberg testifies that Missner continued his visits to their home after the husband's return from the hospital; that she was not around and does not remember the subjects discussed. She visited her husband regularly while he was in the hospital. On one occasion she saw Missner there; she would say about four days after he was taken to the hospital; she thinks it was on Tuesday. She says that Missner came in and said, "Why, Mr. Wineberg I am very sorry to see you here. What happened to you all of a sudden?" and that Wineberg replied, "Well, it happened just like a lightning. I have got a heart attack." She says that Missner stayed for perhaps an hour; that Mr. Missner took her home to the door of her house; that they went home on a streetcar. Mr. Missner attended

Mr. Wineberg's funeral, came to the house while Mr. Wineberg was on his death bed, and after death came to pay his respects to the widow. He helped Mrs. Wineberg fill out the proofs and papers to get the insurance and brought these to her home. Since the signing of the papers he does not come around, and she has not seen him at the synagogue. In fact, since Mr. Wineberg's death she does not attend any more. Mr. Missner, however, comes to her place of business and handles the fire insurance, plate glass, etc. She thinks since the husband's death he has been in there about 20 or 30 times, but she never mentioned these two policies to him that are now in suit. Missner delivered the checks to her for the insurance. She did not know about the policies now being sued. When she found out the company would not pay the $4,000 she asked Missner about it but cannot remember what was said. This was when they talked at the home.

Missner on the contrary testifies he did not visit Mr. Wineberg at the hospital and did not see him there at any time. He denies the several conversations in the presence of Talmage, to which Talmage testified. He says he did not talk about Wineberg's health to his knowledge. He does not remember what he talked about or might have asked him. He is positive that at no time did Wineberg tell him about having a heart condition and says that he did not know that fact.

The master specifically found that Missner, the agent, did not know that Wineberg, the insured, had been in Michael Reese Hospital, and that plaintiff, neither through its agent nor in any other manner, had knowledge prior to the execution of the application that the insured had suffered a heart attack. The proof shows that if the company had known of the medical history of the assured, the policies would not have issued. The master found that Missner did not have knowledge of the false answers made by Wineberg in the application. The burden of proof was on

Mrs. Wineberg as to this issue. The only evidence tending to establish knowledge was that of Talmage and the defendant. Each witness testified as to distinct facts of which the other did not have knowledge. Both were denied by Missner. The testimony of Talmage, in particular, does not appeal. It appears as the testimony of an eager witness. Apparently the master did not believe his testimony was true. Before the master and the chancellor the issue was whether this defense of estoppel had been established by a preponderance of the evidence. The chancellor, giving weight to the recommendation of the master, found that it was not established. The question for our decision is different. We are to determine whether the finding of the master and the chancellor that the facts constituting estoppel had not been proved is clearly and manifestly against the weight of the evidence. On the facts as stated we cannot hold that it is. The decree will be affirmed.

*Affirmed.*

O'CONNOR and McSURELY, JJ., concur.