**NATIONAL FIDELITY LIFE INSUR-
ANCE CO., Plaintiff-Appellant,**

v.

**Joan KARAGANIS, Defendant-Appellee.**

**No. 86–1259.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 8, 1986.

Decided Feb. 2, 1987.

ment on the pleadings which the district court granted. We affirm.

## I.

■ A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law. *Flora v. Home Fed. Savings & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir.1982).[1] The court may consider only matters presented in the pleadings and must view the facts in the light most favorable to the nonmoving party. *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F.2d 174, 177 n. 2 (7th Cir.1986). The court, however, is not bound by the nonmoving party's legal characterizations of the facts. *Id.* In considering this motion, therefore, we assume the facts as alleged by National Fidelity to be true.

On October 13, 1983, the applicant submitted an application to National Fidelity for a life insurance policy in the amount of $250,000. In response to the question "plan applied for" in item 14 of the application, he wrote "TIP–21 Nonsmoker" in the amount of "$250,000." On November 9, 1983, he submitted a completed medical examination report, which is labeled "Supplement to Application to National Fidelity Life Insurance Company." Prior to the effective date of the policy and at the request of National Fidelity, the applicant signed a document (hereinafter "smoking statement") that states: "I do not now smoke cigarettes nor have I smoked any cigarettes for at least the past twelve months." Unlike the medical examination report, the smoking statement does not bear the heading "Supplement to Applica-

Donald E. Casey, Springer, Casey, Dienstag & Silverman, P.C., Chicago, Ill., for plaintiff-appellant.

A. Bruce White, Bell, Boyd & Lloyd, Chicago, Ill., for defendant-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and CAMPBELL, Senior District Judge.*

CUDAHY, Circuit Judge.

National Fidelity Life Insurance Company ("National Fidelity") brought this action to rescind a life insurance policy it had issued to William Karaganis (the "applicant"). National Fidelity alleged that the applicant fraudulently misrepresented that he was a nonsmoker and that it would not have issued the policy to him had it known that he was a smoker. The defendant, Joan Karaganis ("Karaganis"), is the applicant's widow and the beneficiary of the policy. She presented a motion for judg-

---

\* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. Federal Rule of Civil Procedure 12(c) provides:

    Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a mo-

tion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

tion," but is labeled simply "Smoking Statement."

National Fidelity alleged in its complaint, and we must accept as true, that the applicant knowingly provided false answers in his application and smoking statement and that he smoked regularly at the time of and within twelve months prior to the date of the smoking statement. Complaint ¶ 10. National Fidelity further claimed that the question whether or not the applicant was a smoker was material to the insurance risk that the company would assume by issuing to him a life insurance policy. Complaint ¶ 11. Finally, National Fidelity claimed that it had relied on the truth of the applicant's statements, Complaint ¶¶ 9, 12, and that it would not have issued the policy "[i]f truthful answers had been made by the Applicant in the application and smoking statement." Complaint ¶ 13.

The defendant, Joan Karaganis, moved for judgment on the pleadings. She relied on paragraph 6.1 of the policy, which provides that only statements made in the application itself can void the policy. Paragraph 6.1 reads as follows:

GENERAL: We issue this policy in consideration of the attached application any [sic] payment of the premiums shown on Page 1. This policy and application make up the entire contract. Statements made in the application, in the absence of fraud, are representations and not warranties; no other statement may void this policy or be used in defense of a claim.

Karaganis contended that the application consisted only of the application form and the medical examination report, and that the applicant made no statement concerning his smoking in either of these documents. The smoking statement, she argued, was not part of the application; National Fidelity was, therefore, barred by paragraph 6.1 of its own policy from relying on the smoking statement to void the policy.

The district court granted Karaganis' motion for judgment on the pleadings. The court agreed with Karaganis' interpretation of paragraph 6.1. It also agreed that the smoking statement was not part of the application. The court, therefore, held that, "as a matter of law, plaintiff is precluded from relying on the smoking statement to void the policy, based on the limitations described in paragraph 6.1 therein." *National Fidelity Life Ins. Co. v. Karaganis*, No. 85–C–7228, mem. op. at 5 (N.D. Ill. Feb. 7, 1986) ("mem. op.") [Available on WESTLAW, DCTU database].

On appeal, National Fidelity argues several grounds for reversal. National Fidelity contends that even if paragraph 6.1 limits it to misrepresentations in the application, the applicant represented himself as being a nonsmoker in the original application form. National Fidelity further contends that the smoking statement is part of the application and, therefore, misrepresentations in the smoking statement may be used to void the policy. Alternatively, National Fidelity argues that it is not bound by the terms of paragraph 6.1 of its policy. The insurer claims that paragraph 6.1 violates public policy because it conflicts with section 154 of the Illinois Insurance Code and it, along with the rest of the policy, was procured by fraud by the applicant. If paragraph 6.1 is invalid, National Fidelity argues, section 154 governs. Section 154 specifically limits the type of misrepresentations by an insured that an insurance company may use to defeat or avoid a policy. Section 154 provides as follows:

¶ 766. Misrepresentations and false warranties

No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof. No such misrepresentation or false warranty shall defeat or avoid the policy

unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. This section shall not apply to policies of marine or transportation insurance.

Ill.Rev.Stat. ch. 73, ¶ 766 (1985). National Fidelity contends that, under the provisions of section 154, the representations in the smoking statement, which was attached to and made a part of the policy, may be used to defeat the policy. We now address each of these arguments for reversal made by National Fidelity.

## II.

■ In response to item 14 on the original application form, the applicant indicated that the "plan applied for" was a "TIP–21 Nonsmoker" policy. In its brief on appeal, National Fidelity argues, "This was a clear representation by the insured (an attorney) that he was a non-smoker." Appellant's Brief at 7 (emphasis deleted). We do not reach the merits of this claim because National Fidelity did not raise it before the district court. This circuit has repeatedly held that if a party fails to press an argument before the district court, the party waives the right to present that argument on appeal. *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 268 (7th Cir.1986); *Erff v. Markhon Indus., Inc.*, 781 F.2d 613, 618–19 (7th Cir.1986); *Libertyville Datsun Sales v. Nissan Motor Corp.*, 776 F.2d 735, 737 (7th Cir.1985); *Desert Palace, Inc. v. Salisbury*, 401 F.2d 320, 324 (7th Cir.1968). "[A] trial judge may properly depend upon counsel to apprise him of the issues for decision. He is not obligated to conduct a search for other issues which may lurk in the pleadings." *Desert Palace*, 401 F.2d at 324, *quoted in Libertyville Datsun*, 776 F.2d at 737. A ground for reversal may be presented for the first time on appeal only if it involves a question of jurisdiction or if there are exceptional circumstances requir-

ing as a matter of justice that the waiver rule be set aside. *Lazzara*, 802 F.2d at 268; *Libertyville Datsun*, 776 F.2d at 737; *Zbaraz v. Hartigan*, 763 F.2d 1532, 1544 (7th Cir.1985).

National Fidelity contends that it did argue before the district court that the applicant's response to item 14 was a misrepresentation of his smoking status. We find the clearest reference to this claim to be in the complaint in paragraph 10. It alleged there that "[t]he answers made by the Applicant in his application and smoking statement were false in that Applicant was in fact regularly smoking at the time of and within twelve months prior to the date of the smoking statement. . . ." National Fidelity emphasizes that this statement referred to both the application and the smoking statement. In addition, in several other places in its complaint, National Fidelity refers to answers made in the "application and smoking statement." Complaint ¶¶ 7, 9, 11 & 13.

■ We find that these statements were not adequate to raise the claim before the district court. National Fidelity consistently referred to the application and smoking statement together, apparently to foster the impression that the smoking statement was part of the application. Nowhere did the complaint claim specifically that the applicant's response to item 14 of the application constituted a misrepresentation.

More important, even if paragraph 10 of the complaint did raise this claim, National Fidelity waived it by not pressing it before the district court. *Lazzara*, 802 F.2d at 269 (contention included in answer but not "pressed" in district court has been waived); *King v. Stevenson*, 445 F.2d 565, 571 (7th Cir.1971) (same).[2] In her motion for judgment on the pleadings, Karaganis clearly alleged that the applicant had made no statement concerning his smoking status in the application form, Defendant's

---

2. "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir.1983), *quoted in Dale v. Chicago Tribune Co.*, 797 F.2d 458, 466 (7th Cir.1986).

Motion for Judgment on the Pleadings ¶ 8, and that the sole statement relied on by National Fidelity to support its claim of misrepresentation was contained in the smoking statement. *Id.* ¶ 10. National Fidelity was therefore obligated, in order to preserve the claim, to respond to this contention by asserting that it was not relying solely on the smoking statement but also on item 14 of the application form.

In its memorandum in opposition to Karaganis' motion, National Fidelity failed to refute Karaganis' allegations about the scope of its claims; in fact, National Fidelity came very close to conceding the correctness of those allegations. Its characterization of Karaganis' motion was overly narrow: "Defendant's sole contention in her motion is that the smoking statement was not set forth in the application." Plaintiff's Memorandum in Opposition at 3. National Fidelity again focused on the applicant's signing of the smoking statement as the basis for its claim. Although National Fidelity did not respond directly to Karaganis' contention that the applicant made no statement in the application form as to his smoking status, it did refer to item 14. National Fidelity argued that, given the applicant's response to item 14 and the fact that the "application contains no smoking question," it was "appropriate for the company to ask, as it did, for a specific representation that the applicant does not smoke cigarettes and has not smoked within the preceding 12 months." *Id.* at 4. Regardless of the "appropriateness" of the request, National Fidelity did not by this reference raise the claim that the applicant's response to item 14 was a representation as to his smoking status. Rather, we agree with Karaganis that this statement by National Fidelity came close to conceding that the applicant's response to item 14 was not a representation.

### III.

National Fidelity also contends on appeal that the smoking statement "is itself an 'application' or supplement to the original application." Appellant's Brief at 13. If this contention is true, paragraph 6.1 of the policy does not prevent National Fidelity from relying on misrepresentations in the smoking statement to void the policy. We agree, however, with the district court's finding that the smoking statement is not part of the application because it "is not stated to be a part of the application, nor is it incorporated by reference." Mem. op. at 4.

■ Under Illinois law, an insurance policy that contains no ambiguity is to be construed according to the plain and ordinary meaning of its terms, just as would any other contract. However, if a provision of an insurance policy is ambiguous, the provision must be construed in favor of the insured. *Playboy Enters. v. St. Paul Fire Marine Ins.*, 769 F.2d 425, 428 (7th Cir.1985); *United States Fire Ins. Co. v. Schnackenberg*, 88 Ill.2d 1, 4, 57 Ill.Dec. 840, 843, 429 N.E.2d 1203, 1205 (1981); *Dora Township v. Indiana Ins. Co.*, 78 Ill.2d 376, 378, 36 Ill.Dec. 341, 342, 400 N.E.2d 921, 922 (1980); *State Farm Fire & Casualty Co. v. Moore*, 103 Ill.App.3d 250, 255, 58 Ill.Dec. 609, 614, 430 N.E.2d 641, 646 (Ill.App.Ct.1981). A term is ambiguous if it is subject to more than one reasonable interpretation. *Goldblatt Bros., Inc. v. Home Indem. Co.*, 773 F.2d 121, 125 (7th Cir.1985); *State Farm*, 103 Ill.App.3d at 256, 58 Ill.Dec. at 614, 430 N.E.2d at 646. Ambiguous language is strictly construed against the insurance company because the insurer is the drafter of the policy. *Goldblatt*, 773 F.2d at 125; *Playboy*, 769 F.2d at 428; *Dora Township*, 78 Ill.2d at 379, 36 Ill.Dec. at 342, 400 N.E.2d at 922; *State Farm*, 103 Ill.App.3d at 255-56, 58 Ill.Dec. 614, 430 N.E.2d at 646. Thus, the insured's interpretation of an unclear provision must prevail "in order to effectuate 'the predominate purpose of the contract which is to indemnify the insured.'" *Hartford Accident & Indem. Co. v. Neff*, 594 F.Supp. 317, 320 (N.D.Ill.1984) (quoting *State Farm Fire*, 103 Ill.App.3d at 256, 58 Ill.Dec. 614, 430 N.E.2d at 646); *see also Dora Township*, 78 Ill.2d at 378-79, 36 Ill.Dec. at 342, 400 N.E.2d at 922.

With these standards in mind, we now examine the meaning of the word "application" as used in paragraph 6.1 of the policy in question. The initial form completed by the applicant is labeled "Application to National Fidelity Life Insurance Company." Almost one month after submitting the original application form, the applicant submitted a medical examination report which is labeled "Supplement to Application to National Fidelity Life Insurance Company." Approximately one-and-a-half months later, the applicant signed a form labeled "smoking statement" which states: "I do not now smoke cigarettes nor have I smoked any cigarettes for at least the past twelve months." Unlike the medical report, the smoking statement does not indicate that it is part of the application. Neither the original application form nor the medical report refers to the smoking statement. Paragraph 6.1 of the policy expressly restricts the misrepresentations National Fidelity may use to avoid the policy to statements in the "application." National Fidelity drafted all of the relevant documents. It chose to use the word "application" in paragraph 6.1 and then used that term to label both the original application form and the medical examination report, but not the smoking statement.

█ We find that an ambiguity exists in the policy as to whether or not the smoking statement is part of the application. In accordance with Illinois insurance law, we must resolve that ambiguity in favor of the insured. We therefore find that the smoking statement is not part of the application for purposes of paragraph 6.1 of the policy, and National Fidelity may not rely on the smoking statement to avoid the policy.

## IV.

█ National Fidelity contends, in the alternative, that paragraph 6.1 of the policy is unenforceable. Courts will enforce a contract as written by the parties unless the contract is contrary to public policy. *Matusek Academy of Music, Inc. v. National Surety Corp.*, 210 F.2d 333, 337 (7th Cir.1954); *Severs v. Country Mutual Ins.*

*Co.*, 89 Ill.2d 515, 520, 61 Ill.Dec. 137, 139, 434 N.E.2d 290, 292 (1982); *Hancock v. National Council of Knights & Ladies of Security*, 303 Ill. 66, 73, 135 N.E. 33, 35 (1922). The applicable Illinois rule is as follows:

> Parties competent to contract may enter into such agreements with each other as they see fit and it is the purpose of the law and function of the court to enforce their contract, if not in violation of law or opposed to public policy. Courts do not make contracts for parties who are fully capable of making their own agreements...."

*Matusek*, 210 F.2d at 337 (quoting *Hancock*, 303 Ill. at 73, 135 N.E. at 35).

National Fidelity argues that paragraph 6.1 is contrary to public policy for two reasons. First, National Fidelity suggests that paragraph 6.1 is in conflict with section 154 of the Illinois Insurance Code. National Fidelity further argues that, because the policy was procured by fraud, every provision of the policy, including paragraph 6.1, is tainted by the fraud and should be declared void.

█ National Fidelity is correct in suggesting that, if a conflict exists between a contract provision and a statutory provision, the statutory provision governs. *DC Elecs., Inc. v. Employers Modern Life Co.*, 90 Ill.App.3d 342, 348, 45 Ill.Dec. 690, 694, 413 N.E.2d 23, 28 (Ill.App.Ct.1980). Any statutory provision that is applicable to a contract is considered to be a part of that contract. *Id.* A contract provision is contrary to public policy and therefore invalid if it "dilute[s] or diminish[es] statutory provisions applicable to [the insurer's] contract of insurance." *Id.* However, where a statutory provision is for the benefit of the insured, that statute does not prohibit the insurance company from including in its policy a provision that is even more favorable to the insured than is required by the statute. In such a case, the policy provision is not in conflict with the statute; rather, it furthers the aim of the legislature to protect the insured. For example, Illinois requires by statute that every life

insurance policy be incontestable after two years from the date of issue. Ill.Rev.Stat. ch. 73, ¶ 836 (1985). In *Mutual Life Ins. Co. v. Wineberg*, 319 Ill.App. 177, 181, 185, 49 N.E.2d 44, 47, 48 (Ill.App.Ct.1943), the court found that an incontestability clause is for the benefit of the insured and that the statutorily required two-year incontestability period was the minimum protection required. The court held that the parties could contract for a shorter incontestability period more favorable to the insured; they could even have agreed that the policy was incontestable from the date of issue. *Id.* at 185, 49 N.E.2d at 48 (quoting *Metropolitan Life Ins. Co. v. Consento*, 297 Ill.App. 450, 456, 17 N.E.2d 1019, 1022 (Ill.App.Ct.1938)); *see also Nabor v. Occidental Life Ins. Co.*, 78 Ill.App.3d 288, 293 n. 2, 33 Ill.Dec. 543, 548, 396 N.E.2d 1267, 1272 n. 2 (Ill.App.Ct. 1979) ("In this case since the policy was at least as liberal as the clauses required by statute, it was not necessary for us to construe the statute.").

In order to determine whether paragraph 6.1 impermissibly conflicts with section 154, we must examine the purpose behind the enactment of that section. The relevant provision of section 154 states that an insurance company may use a misrepresentation by the insured to defeat a policy only if the misrepresentation was "stated in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part

thereof." Ill.Rev.Stat. ch. 73, ¶ 766 (1985). This court has previously found that the purpose of this requirement "is 'solely' for the protection of the insured." *Lawndale Nat'l Bank, Under Trust No. 4846 v. American Casualty Co.*, 489 F.2d 1384, 1387 (7th Cir.1973) (citation omitted).[3] The insurance company must provide the insured with all of the documents upon which it intends to rely in order to permit the insured to "review all previous statements while alive and correct any misstatements which may appear therein." *Alperin v. National Home Life Assurance Co.*, 32 Ill.App.3d 261, 264, 336 N.E.2d 365, 368 (Ill.App.Ct.1975).[4]

Given that the purpose behind section 154 is to protect insureds from insurance companies seeking to void their policies, the statute does not prevent insurance companies from giving their insureds even more protection. National Fidelity assured the applicant that it would use only misrepresentations that appeared in the application to void the policy. By this promise, National Fidelity indicated to the applicant that he need only review his statements in the application and correct any misstatements in it to ensure that his policy would not later be invalidated on the ground of fraud. Allowing the insurance company to avoid the effect of paragraph 6.1 of its own policy could expose its insureds to the very harms against which section 154 was in-

---

**3.** In its brief on appeal, National Fidelity seems to concede that section 154 is for the benefit of the insured and is only the minimum protection that the insurance company must provide:

> However, in the case of insurance contracts, and in recognition of the unique character of the negotiations for insurance policies, the Illinois General Assembly adopted Ins.Code Sec. [154] *for the protection of insureds, primarily,* and established the rule that even in case of fraud in the issuance of a policy of insurance, the offending statements or representations must be *at least* stated in or attached to the policy itself in a written application or endorsement or rider.

Appellant's Brief at 16 (emphasis added).

**4.** In another case, the court described the protection afforded the insured by section 154 as follows:

> The primary purpose of requiring the application to be attached to the insurance policy is to allow for objective evidence of negotiations at the time of application for the protection of the insured from possible frauds by insurance agents in falsifying the answers given by the insured in applying for the insurance. In such a case if the application is not attached to the policy, so that the insured can examine it carefully, he labors under the mistaken impression that he is protected by the insurance policy issued to him when, in fact, he may not have any coverage.

*Inter-Insurance Exchange of Chicago Motor Club v. Milwaukee Mutual Ins. Co.*, 61 Ill.App.3d 928, 931–32, 18 Ill.Dec. 927, 930, 378 N.E.2d 391, 394 (Ill.App.Ct.1978).

tended to protect. Thus, requiring National Fidelity to comply with paragraph 6.1 does not create a conflict with section 154.

Finally, National Fidelity contends that it would violate public policy to allow Karaganis to rely on a provision that creates "an absolute defense in an action based on fraud in the inducement to contract." Appellant's Brief at 11. The insurance company argues that because the applicant obtained the policy by fraudulently misrepresenting himself as a nonsmoker, Karaganis may not rely upon the terms of the policy, including paragraph 6.1, to defend an action to rescind and nullify the policy. National Fidelity asserts that "[i]t is a basic principle of contract law that where one party to a contract has been fraudulently induced to enter that contract, the contract is voidable at the option of the innocent party, regardless of any contractual provision limiting or waiving the fraud." Appellant's Reply Brief at 8. National Fidelity cites *American Jurisprudence 2d* for support as follows:

> No covenant of immunity can be drawn that will protect a person who acts in bad faith, because such a stipulation is against public policy, and the courts will not enforce it. Similarly, the law does not permit a covenant of immunity to be drawn that will protect a person against his own fraud; such a covenant is unenforceable because of public policy. A party to a contract cannot, by misrepresentation of a material fact, induce the other party to enter into the contract to his damage, and then protect himself from the legal effect of such misrepresentation by inserting a clause in the contract to the effect that he is not to be held liable for the misrepresentation.

17 *Am.Jur.2d* Contracts § 190 (1964), *quoted in* Appellant's Reply Brief at 11–12.

We do not disagree with National Fidelity's characterization of the general rules governing the admissibility of evidence of fraud in the inducement to contract. Yet National Fidelity relies almost entirely on broad principles of contract law; it does not discuss how or why these principles should apply to the specific facts of this case. The implication of National Fidelity's argument is that public policy invariably is violated by allowing an insurance company to include in its own policy a provision limiting the ways in which it can defeat that policy on the ground of fraud by the insured. We reject this conclusion and find that paragraph 6.1 is not against public policy.

The passage from *American Jurisprudence 2d* on which National Fidelity relies focuses on the public policy against allowing a party to act fraudulently to induce another to enter into a contract and then protect himself against his own fraud by inserting in the contract a covenant of immunity:

> [T]he law does not permit a covenant of immunity to be drawn that will protect a person *against his own fraud.* . . . A party to a contract cannot, by misrepresentation of a material fact, induce the other party to enter into the contract to his damage, and then *protect himself* from the legal effect of such misrepresentation by inserting a clause into the contract to the effect that *he is not to be held liable* for the misrepresentation.

17 *Am.Jur.2d* Contracts § 190 (1964) (emphasis added). In the present case, the contract provision was not written by the party alleged to have committed fraud; National Fidelity on its own initiative included paragraph 6.1 in the policy it had written. Also, paragraph 6.1 does not, as National Fidelity suggests, create an "absolute defense" to an action to void the policy based on fraud by the insured. Appellant's Brief at 11. It merely spells out in advance the manner in which National Fidelity can bring such an action; National Fidelity chose to limit itself through paragraph 6.1 to statements in the application.

The strongest argument for concluding that paragraph 6.1 does not violate public policy is that limitations on how an insurance company may defeat a policy for fraud similar to that in paragraph 6.1 have been imposed by the Illinois legislature by statute and upheld by the Illinois courts

when such provisions have appeared in insurance policies. As we noted above, section 224 of the Illinois Insurance Code declares every life insurance policy to be incontestable after two years from the date the policy was issued. That is, misrepresentations made by the insured in procuring the insurance may not be used by the insurance company to void the policy after two years from the date of issue. An Illinois court has stated that "it is manifest that the incontestable clauses in insurance policies is for the benefit of the assured, that his policy instead of being uncertain may become a certain and absolute promise to pay." *Wineberg*, 319 Ill.App. at 181, 49 N.E.2d at 46. Thus, Illinois has a public policy in favor of providing the insured with some certainty as to the validity of his or her policy. In fact, Illinois courts have stated that an insurance company may include in its policy a provision reducing the incontestability period to one year, or may even contract for a policy that is incontestable from the date of issue. *Id.* (citing *Consento*, 297 Ill.App. at 185, 17 N.E.2d at 1022). A policy provision making the policy incontestable from the date it is issued clearly is more constraining on an insurance company seeking to void a policy than is the limitation imposed by paragraph 6.1.[5]

The Illinois legislature's enactment of section 154 itself demonstrates a public policy in favor of constraints such as that in paragraph 6.1 on the ability of insurance companies to defeat policies by alleging misrepresentation or fraud by the insured. As discussed above, section 154 was enacted to protect insureds from losing insurance coverage they believed to be valid. This protection is afforded whether the insurance company seeks to void the policy for misrepresentation or for fraud in the inducement, as is alleged in the present case. An Illinois court rejected an argument by an insurance company that section 154 applied to misrepresentations but not

to fraud in the inducement. *Inter-Insurance*, 61 Ill.App.3d at 932, 378 N.E.2d at 394. There, the insurer had not attached the application containing the misrepresentations to the policy as required by section 154. The company argued that the policy could nevertheless be voided by false statements made in the application because the applicant committed fraud in obtaining the policy. The court rejected the distinction and held that the insured's "conduct and the false statements in the application for insurance are specifically the type of misrepresentations to which [section 154] was designed to apply." *Id.*

Even where section 154 is inapplicable, an insurance policy may contain a provision limiting the representations that an insurance company may use to void a policy for fraud. *Schafer v. Valley Forge Life Ins. Co.*, 23 Ill.App.3d 47, 318 N.E.2d 308 (Ill. App.Ct.1974). The group life insurance policy at issue in *Schafer* provided that "no such statements shall be used in any contest unless a copy of the instrument containing the statement is, or, has been furnished to such person or to his beneficiary." 23 Ill.App.3d at 49, 318 N.E.2d at 309. The court found that the purpose of this provision "is to provide an opportunity to review the application while the insured is still alive and to correct misstatements which may appear therein." *Id.* Because the insurance company did not furnish a copy of the application to the insured while he was still living, the court held that the company could not rely on statements in the application in its suit to deny recovery on the ground of fraudulent representations. *Id.* Similarly, public policy is not violated by requiring National Fidelity to comply with paragraph 6.1 of its policy.

## V.

For the reasons discussed above, National Fidelity may not rely on the smoking

---

5. In an early opinion evaluating the validity of an incontestability provision, the Supreme Court of South Carolina, noting the existence of public policy arguments both for and against incontestability clauses, concluded that it would enforce the provision as agreed to by the parties: "In such a contest we shall take no part, but leave the parties to the words of the instrument." *MacKendree v. Southern States Life Ins. Co.*, 112 S.C. 335, 340, 99 S.E. 806, 808 (1919).

statement to void the applicant's life insurance policy. As required by paragraph 6.1 of the policy, National Fidelity may use only those statements that appear in the application (here, the original application form and the medical examination report) to defeat the policy on the ground of fraud in the inducement. National Fidelity did not allege before the district court that either of these documents contained a misrepresentation by the applicant. We, therefore, affirm the district court's grant of Karaganis' motion for judgment on the pleadings.

AFFIRMED.